UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE THA LEI PAW, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.: 17-cv-0532-BTM-JLB<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 12]** |

Presently before the Court is Defendant United States of America's motion for summary judgment. (Def.'s Mot. for Summ. J., ECF No. 12.) For the reasons discussed below, Defendant's motion is denied without prejudice.

## I. BACKGROUND

On March 16, 2017, Plaintiffs Sue Tha Lei Paw, Friday Moe Ro, Nyien Nyien Aye, Win Htut, Tar Lue, and Yoon Wady Food Store (collectively "Plaintiffs") brought an action against Defendant for disqualifying Yoon Wady Food Store ("Yoon Wady") from the federal Supplemental Nutritional Assistance Program ("SNAP", formerly known as the food stamps program), which is overseen by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). (ECF No. 1.) Plaintiffs brought this action for a de novo review of the agency's final decision.

## A. The Supplemental Nutritional Assistance Program

SNAP was implemented by Congress "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. The program operates by increasing low-income families' purchasing power. *Id.* Qualifying households receive benefits in the form of Electronic Benefit Transfer ("EBT") cards with which they can purchase eligible food items. 7 U.S.C. § 2016(a), (c). Only approved stores are eligible to participate in the program and accept SNAP benefits in exchange for eligible food items. 7 U.S.C. § 2018. A qualifying store may be fined a civil money payment or permanently disqualified from the program if it accepts SNAP benefits in violation of the program's regulations. 7 U.S.C. § 2021(a).

SNAP expressly forbids "trafficking," which is "[t]he buying, selling . . . or otherwise effecting an exchange of SNAP benefits issued and accessed via [EBT] cards . . . for cash or consideration other than eligible food." 7 C.F.R. § 271.2. If the FNS determines that a participating store trafficked SNAP benefits, it may permanently disqualify that retailer from participating in SNAP. 7 C.F.R. § 278.6(a). When determining whether disqualification is warranted, the FNS may rely on evidence such as "facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC) . . . ." *Id.*

## B. Factual Background

Plaintiff Yoon Wady Food Store is a store located in San Diego, California that carries dried Thai, Burmese (Myanmar) and Asian food. (Administrative

//

Record[1] ("AR") 36, 109.)  Before July 14, 2016, Yoon Wady was an authorized SNAP retailer.  After Yoon Wady's SNAP redemption triggered an alert on the Anti-Fraud Locator using EBT Retailer Transactions ("ALERT") system for trafficking, the FNS audited the store from October 2015 to March 2016.  (Id. at 32.)  During its review, the FNS analyzed Yoon Wady's EBT transactions and observed multiple purchases from the same SNAP accounts within short time periods and in excessively large amounts.  (Id. at 40, 90, 605–11.)  On April 20, 2016, FNS visited Yoon Wady and noted only one cash register, one SNAP terminal device, no conveyor belt, no optical scanner, one shopping basket, and no shopping carts.  (Id. at 34.)  The FNS also compared Yoon Wady to other stores in the neighborhood, including stores that allegedly sell comparable Asian food items.  (Id. at 41.)

Based on EBT transaction data as well as the store visit, FNS concluded that these patterns were consistent with trafficking, which warranted issuance of a charge letter in accordance with the program's regulations.  (Id. at 90–91.)  On July 14, 2016, the FNS sent Plaintiffs the charge letter.  (Id.)  The letter identified two patterns of SNAP transaction activity indicative of trafficking: (1) multiple transactions from a single account in unusually short time frames; and (2) excessively large purchase transactions.  (Id. at 93–104.)  The letter cited to 64 instances in which multiple transactions were made from the same SNAP accounts in unusually short time frames.  (Id. at 93–96.)  The letter also instructed Plaintiffs on how to request a civil money penalty in lieu of permanent disqualification.  (Id. at 90–91.)  Plaintiffs replied to the charge letter in writing, providing pictures, a stock list, invoices, customer affidavits, and various documentation including Yoon Wady's 2015 tax documents.  (Id. at 107–269.)

---

[1] On June 23, 2017, Defendant lodged with the Court the Certified Administrative Record by delivering a hard copy and a disk containing an electronic copy to the Clerk of the Court.  (ECF No. 8.)

1 The FNS ultimately determined that Plaintiffs' evidence did not outweigh the
2 evidence gathered during the investigation. (Id. at 286–87.) Because Plaintiffs
3 did not submit evidence demonstrating Yoon Wady's eligibility for a civil money
4 penalty, FNS permanently disqualified Yoon Wady from SNAP. (Id.)

On October 28, 2016, Plaintiffs appealed the FNS's determination and requested administrative review. (Id. at 290.) They submitted a brief along with supporting materials, including more than a dozen affidavits by SNAP beneficiaries who shop at Yoon Wady. (Id. at 301–529.) On February 13, 2017, the FNS issued its final agency decision. (Id. at 598–619.) On March 16, 2017, Plaintiffs initiated this action against Defendant seeking a *de novo* review of the permanent disqualification. At this juncture, the parties have not engaged in discovery and Defendant has submitted the instant motion for summary judgment based on the Administrative Record.

## **III. LEGAL STANDARDS**

**A. Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2)

4

by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

Federal Rule of Civil Procedure 56(d) affords a nonmoving party additional time to take discovery if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(d). Ordinarily, "[w]here . . . a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(d) motion fairly freely." *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

## B. Review of SNAP Program Disqualification

A retailer may challenge the FNS's final decision in federal court. 7 U.S.C. § 2023(a)(13); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997). The reviewing court will determine the validity of the FNS's penalty in a "trial de novo." 7 U.S.C. § 2023(15). "A trial de novo is a trial which is not limited to the administrative record—the plaintiff may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency." *Kim*, 121 F.3d at 1272 (quoting *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir. 1975)). "Unlike the substantial evidence standard employed in reviewing determinations under the Administrative Procedure Act, 5 U.S.C. § 500, et. seq., the trial de novo provision allows courts to look beyond the administrative record and reach its own factual and legal conclusions." *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (internal citation omitted). The retailer bears the burden of proving by a preponderance of the evidence that the violations did not occur. *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563 (9th Cir. 1986).

The reviewing court ultimately determines two questions: "(1) Did the violation occur? and (2) Is the penalty valid?" *Id.* Even a single instance of trafficking requires the court to uphold a permanent disqualification. *Kahin*, 101 F. Supp. 2d at 1303. If the store fails to satisfy this burden, then the court reviews the penalty to determine "whether the sanction is unwarranted in law or without justification in fact." *Id.* (internal citation omitted).

## IV. DISCUSSION

### A. Whether Yoon Wady Engaged in Trafficking

Defendant argues that Plaintiffs cannot meet their burden in rebutting the agency's final decision. Defendant submits the following evidence to demonstrate that Yoon Wady engaged in trafficking: "(1) multiple withdrawals from the same SNAP beneficiary EBT account in rapid succession; (2)

excessively large debits from SNAP beneficiary EBT accounts; (3) inadequate store infrastructure and inventory to support these large and rapid transactions; (4) SNAP redemptions exceeding Yoon Wady's food purchases; and (5) a more than 50% reduction in SNAP EBT transactions after FNS placed Plaintiffs on notice that it had evidence that Yoon Wady was trafficking." (Def.s Mot. for Summ. J. 6.)

Plaintiffs, on the other hand, argue that based on the current state of the evidence, there are enough disputes of material of fact that must be resolved at trial. Moreover, because Plaintiffs are not limited to the administrative record, they have included a Rule 56(d) affidavit in their Opposition, seeking extensive discovery related to the ALERT system, an unredacted administrative record, information related to the households identified in the charging letter, and information related to all the stores that FNS used as comparisons. (Andrew Tapp Affidavit, Pl.s' Opp'n, Ex. G, ECF No. 14–8.)

At the outset, Plaintiffs challenge the FNS's use of the ALERT system. The Court is not persuaded by these arguments because the ALERT system is merely used as a detection tool. (Pl.s' Opp'n, Ex. C, 21:9–10.) Here, for example, after receiving the data, the FNS conducted an investigation to support its determination that Yoon Wady was trafficking. The Court also does not believe that further discovery related to the ALERT system would create a genuine issue of material fact as to the FNS' use of data to detect suspicious behavior. Indeed, courts have upheld a store's disqualification from SNAP based on irregular patterns in the store's EBT data. *See, e.g., Idias v. United States*, 359 F.3d 695, 698 (4th Cir. 2004) ("Congress expressly authorized the FNS to consider 'evidence obtained through a transaction report under an electronic benefit system' in disqualifying food stores for food stamp trafficking." (quoting 7 U.S.C. § 2021(a))); *Young Choi, Inc. v. United States*, 639 F. Supp. 2d 1169, 1182 (D. Haw. 2009) ("The law is clear that FNS may base its finding of a

7

violation on analysis of EBT transaction reports or on-site store surveys.").

Nevertheless, the Court finds that Defendant's evidence is not so undeniable as to dismiss the argument that additional evidence would assist Plaintiffs in creating a genuine issue of material fact. *See ANS Food Market v. United States*, No. JKB-14-2071, 2015 WL 1880155, at *3–4 (D. Md. April 22, 2015) (denying defendant's motion for summary judgment and permitting further discovery because the evidence was not "undeniable" and plaintiff submitted a Rule 56(d) affidavit); *see also Rodriguez Grocery & Deli v. United States*, No. WDQ-10-1794, 2011 WL 1838290, at *5–6 (D. Md. May 12, 2011) (granting discovery despite strong evidence of trafficking because certain data used by the agency in making its determination remained within its exclusive control); *but see AJS Petroleum, Inc. v. United States*, No. L-11-1085, 2012 WL 683538, at *5 (D. Md. Mar. 1, 2012) ("Because additional discovery would not change the factual landscape in this case, an analysis under the summary judgment standard is appropriate.").

First, Plaintiffs dispute that multiple, rapid withdrawals from the same SNAP account demonstrate that Yoon Wady was trafficking. They argue that Yoon Wady's customers often make multiple purchases at the store, in large part because of its phone-in service. Customers utilizing this service call in their orders and once at the store often times decide to purchase more items. In their response to the charge letter, Plaintiffs offered this explanation for at least one household—Q026. (AR 110). Without access to data matching Yoon Wady's customers to the underlying suspicious transactions, Plaintiffs cannot reasonably account for other instances. Indeed, some courts have recognized the value of obtaining this information in challenging the agency's findings. *See, e.g., Rodriguez Grocery & Deli*, 2011 WL 1838290, at *5–6; *Idias*, 359 F.3d at 698 (recognizing that the store had rebutted some of the Government's evidence by introducing "affidavits from some of the customers whose transactions had been

8

flagged as questionable, each of whom denied ever having received cash in exchange for using an EBT card.")

Second, Defendant identified 415 EBT transactions during the six-month period of $45.59 or more. (AR 68–75, 610–11.) Plaintiffs argue that the large transactions are not abnormal because the store sells several items like fish and rice that Yoon Wady's customers regularly purchase in bulk at the beginning of the month. Additionally, Plaintiffs submit that its customers primarily shop at Yoon Wady because it is the only Burmese/Karen speaking store within miles that caters to a specific immigrant refugee community. Plaintiffs submit affidavits in support of this contention. (*See* Pls.' Opp'n Exs. D-F, ECF No. 14-5–14-7.) Defendant claims that there are other stores within the area that sell similar goods, but without the identity of those stores, Plaintiffs cannot fairly dispute that claim.

Third, Plaintiffs challenge the claim that Yoon Wady's infrastructure and inventory cannot support these large and rapid transactions or that its SNAP redemptions exceed its food purchases. Defendants argue that Yoon Wady's invoices demonstrate that it did not have the inventory to support the volume of SNAP redemptions during the review period. Plaintiffs, on the other hand, point to Yoon Wady's 2015 tax return, which accounts for three months of the review period, to argue that the cost of goods sold is consistent with the gross receipts. Though, as Defendant notes, the tax return may not segregate the SNAP-eligible items from the ineligible items that Yoon Wady carries, the Court cannot weigh the effectiveness of the tax return and must draw inferences in the light most favorable to Plaintiffs. *See Anderson*, 477 U.S. at 255; *see also Brothers Food & Liquor, Inc. v. United States*, 626 F. Supp. 2d 875, 881 (N.D. Ill. 2009).

Lastly, Defendant in its reply argues that because Plaintiffs have not offered evidence or even attempted to dispute that Yoon Wady's SNAP redemptions dropped dramatically after it was put on notice, the Court should

9

grant its motion.  Based on the evidence that Plaintiffs have submitted and their request for discovery, the Court cannot conclude as a matter of law that Plaintiffs have failed to meet their burden based on this claim alone.  The Court is not inclined to deprive Plaintiffs of the opportunity to develop their case, particularly when material evidence remains within Defendant's exclusive control.

## V. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment (ECF No. 12) is **DENIED** without prejudice.  Defendant may renew its motion relying on its present motion after completion of discovery.  The matter is referred to Magistrate Judge Burkhardt to conduct a case management conference ("CMC").  Discovery shall be completed within 120 days of the CMC.  The pretrial conference will be held on October 23, 2018 at 2:00 p.m.

**IT IS SO ORDERED**.

Dated: March 29, 2018

Barry Ted Moskowitz, Chief Judge
United States District Court